J-A07036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.A.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T.A.K. | : | No. 1704 MDA 2017 |

Appeal from the Order Entered October 16, 2017
in the Court of Common Pleas of Berks County Civil Division at No(s):
14-485 Custody

BEFORE:  PANELLA, J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:               **FILED MAY 09, 2018**

Appellant, M.A.K. ("Mother"), files this appeal from the order dated October 13, 2017, and entered October 16, 2017,[1] in the Berks County Court of Common Pleas, awarding her and T.A.K. ("Father") shared legal custody and Father primary physical custody of their minor son B.K., born in September 2011 ("Child").  After review, we affirm the trial court's order.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The subject order was dated October 13, 2017.  However, the clerk did not provide notice pursuant to Pa.R.C.P. 236(b) until October 16, 2017.  Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)."  Pa.R.A.P. 108(b).  Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given."  *Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999).

At the time of Child's birth, Mother and Father resided together in Hamburg, Berks County. Mother and Father never married and separated in December 2013. Subsequent to separation, Mother moved to Tamaqua, Schuylkill County. Notes of Testimony ("N.T."), 10/6/17, at 16; N.T., 8/17/17, at 36-37, 57, 62. Pursuant to an agreed upon order dated March 24, 2014, and entered March 25, 2014, the parties were granted shared legal custody of the child. Further, Mother was granted primary physical custody, and Father partial physical custody from every Wednesday at 5:00 p.m. to Friday at 5:00 p.m. and alternate weekends from Friday at 5:00 p.m. to Monday at 8:00 a.m.[2] Father eventually moved to Bernville, Berks County and Mother to Royersford, Montgomery County.[3] N.T., 10/6/17, at 17; N.T., 8/17/17, at 37, 58, 62. The parties continued to follow the custody order entered March 25, 2014. N.T., 8/17/17, at 6. Each pursued new relationships and is now married. *Id.* at 5, 59-60. Moreover, Mother and her husband are expecting a child in May 2018. N.T., 10/6/17, at 51.

Mother filed a petition for modification on March 7, 2017 based upon the fact that the parties resided in different school districts and that Child would

_____

[2] The parties conceded that this was essentially shared physical custody. N.T., 8/17/17, at 37, 62.

[3] Father moved in approximately December 2014 and Mother in March 2016. Both parties served notices of proposed relocation on the other party as a result of their moves. N.T., 10/6/17, at 17.

be entering kindergarten in the 2017-18 school year.[4] Petition for Modification of Custody, 3/7/17. The court conducted hearings on August 17, 2017 and October 6, 2017. Mother and Father, represented by counsel, each testified on their own behalf. In addition, Mother presented the testimony of her husband's ex-paramour, C.G.; her husband, T.F.; her mother-in-law, L.A.F.; and her father-in-law, R.F. Father presented the testimony of his mother, J.K.; his older son, W.K.; and his wife, A.K.

At the outset of the hearing on August 17, 2017, given that the start of school was rapidly approaching, the parties acknowledged that the court would make a decision as to school.

> THE COURT: As I understand the main issue in this case is school. You're in two different school districts. So I think that is what the focus is going to be really this afternoon. . . .
>
> . . .
>
> [Counsel for Mother]: My understanding is that we are going to proceed -- I am going to have direct examination on [Mother] today, and [counsel for Father] can cross-examine her. I will not rest. At that point [counsel for Father] can call his client. I can cross-examine him. We are not going to rest. That gives the [court] the opportunity to make a decision as to what school this child is going to go to since we have one week to make that decision.
>
> Is that correct?
>
> [Counsel for Father]: That's correct, Your Honor. And then the hope that we would be able to agree on a final custody order based on that decision. If not, we can preserve another date in the future to finish the trial if need be.

---

[4] Upon review of the certified record, a prior petition for modification had been withdrawn.

- 3 -

N.T., 8/17/17, at 3-4.

Upon conclusion, on August 17, 2017, after hearing from both Mother and Father, the court placed a decision on the record awarding Father primary physical custody of the child. *Id.* at 108. The following day the court entered an order memorializing its decision.[5] Pursuant to interim order dated and entered August 18, 2017, the court maintained shared legal custody. Further, the court awarded primary physical custody to Father and the ability to enroll Child in Schuylkill Valley School District. The court awarded partial physical custody to Mother three weekends per month from Friday at 6:00 p.m. to Sunday at 6:00 p.m.

Subsequent to the second day of hearing, pursuant to order dated October 13, 2017, and entered October 16, 2017, the court awarded the parties shared legal custody and Father primary physical custody of the child. The court further awarded Mother partial physical custody during the school year, alternating weekends from Friday at 6:00 p.m. to Sunday at 6:00 p.m., Wednesday after school or at 4:00 p.m. until 8:00 p.m., Christmas break, and spring break. In the summer, the court provided for a shared physical custody schedule on a week-on/week-off alternating basis.

---

[5] The court notes, "Given the immediate issue of where the minor child. . .will attend school and the likelihood that the trial would not be completed on August 17, 2017, the trial, by agreement of the parties, was handled as a petition for special relief. This [c]ourt will cooperate with scheduling this matter for a full custody trial later this [f]all, if needed." Interim Order, 8/18/17.

On November 2, 2017, Mother, through her trial counsel, filed a notice of appeal, as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court issued a Rule 1925(a) Opinion dated November 28, 2017, and entered November 30, 2017, directing attention to its order dated October 13, 2017, and entered October 16, 2017. Moreover, while the trial court did not find the matter a relocation case, to the extent this Court would require an examination of the relocation factors pursuant to 23 Pa.C.S.A. § 5337, the court went on to provide an analysis of the relocation factors.

On appeal, Mother raises the following issues for our review:

I. DID THE TRIAL COURT ERR IN AWARDING FATHER PRIMARY PHYSICAL CUSTODY?

II. DID THE TRIAL COURT ERR IN DETERMINING THAT THIS IS A RELOCATION CASE AND FINDING 23 Pa.C.S.A. § 5328(a)(11) – "THE PROXIMITY OF THE RESIDENCE OF THE PARTIES" IN FAVOR OF FATHER WITHOUT CONSIDERING THE RELOCATION FACTORS AS SET FORTH IN 23 Pa.C.S.A. § 5337?

III. DID THE TRIAL COURT ERR IN DETERMINING THAT 23 Pa.C.S.A. § 5328(a)(1) – "WHICH PARTY IS MORE LIKELY TO ENCOURAGE AND PERMIT FREQUENT AND CONTINUING CONTACT BETWEEN THE CHILD AND ANOTHER PARTY" FAVORS NEITHER PARTY, WHERE IT FAVORS MOTHER?

IV. DID THE TRIAL COURT ERR IN DETERMINING THAT 23 Pa.C.S.A. § 5328(a)(3) – "THE PARENTAL DUTIES PERFORMED BY EACH PARTY ON BEHALF OF THE CHILD" FAVORS NEITHER PARTY, WHERE IT FAVORS MOTHER AND FACTOR 23 Pa.C.S.A. § 5328(a)(10) –"WHICH PARTY IS MORE LIKELY TO ATTEND TO THE DAILY PHYSICAL, EMOTIONAL, DEVELOPMENTAL, EDUCATIONAL AND SPECIAL NEEDS OF THE CHILD" FAVORS FATHER, WHERE IT FAVORS MOTHER?

V. DID THE TRIAL COURT ERR IN DETERMINING THAT 23 Pa.C.S.A. § 5328(a)(4) – "THE NEED FOR STABILITY AND CONTINUITY IN THE CHILD'S EDUCATION, FAMILY LIFE AND COMMUNITY LIFE[,"] AND 23 Pa.C.S.A. § 5328(a)(5) – "THE AVAILABILITY OF EXTENDED FAMILY[,"] AND 23 Pa.C.S.A. § 5328(a)(12) – "EACH PARTY'S ABILITY TO CARE FOR THE CHILD OR ABILITY TO MAKE APPROPRIATE CHILD CARE ARRANGEMENTS" FAVOR FATHER, WHERE THESE FACTORS FAVOR MOTHER?

VI. DID THE TRIAL COURT ERR IN DETERMINING THAT 23 Pa.C.S.A. § 5328(a)(6) – "THE CHILD'S SIBLING RELATIONSHIPS" FAVORS FATHER, WHERE THIS FACTOR EITHER FAVORS MOTHER OR FAVORS NEITHER PARTY?

Mother's Brief at 2-3.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A.

§§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted); *see*

*also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa.Super. 2015).

This Court consistently has held:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained

by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa.Super. 2006) (*quoting **Jackson***

***v. Beck***, 858 A.2d 1250, 1254 (Pa.Super. 2004)).  In addition,

> [a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order.  An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused.  An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***M.A.T. v. G.S.T.***, 989 A.2d 11, 18-19 (Pa.Super. 2010) (*en banc*) (citations

omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child.  **See** 23 Pa.C.S.A. §§ 5328, 5338.  Section 5323 of the Act provides for the following types of awards:

> **(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>
> > (1) Shared physical custody.
> >
> > (2) Primary physical custody.
> >
> > (3) Partial physical custody.
> >
> > (4) Sole physical custody.
> >
> > (5) Supervised physical custody.
> >
> > (6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Section 5328(a) sets forth the best interest factors that the trial court must consider in doing so. *See E.D. v. M.P.*, 33 A.3d 73, 79-80 n.2 (Pa.Super. 2011). Specifically, Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Further, with regard to the custody, we have stated as follows:

. . . "**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. ***Id.***

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written

opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa.Super. 2014).

In its order, the trial court carefully analyzed and addressed each factor pursuant to Section 5328(a) and the Child's best interests as follows:

CUSTODY FACTORS

The [c]ourt incorporates the above Facts Established above in the discussion of the following custody factors.

1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

The [c]ourt truly believes both parents are good, loving parents and both want what's best for [] Child, they simply dislike each other. The problem with this matter is that Mother and Father do not communicate well, to the point that they may both be doing damage to [] Child. This factor favors neither party.

2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which can better provide adequate physical safeguards and supervision of the child.

There has been no abuse committed by either party. This factor favors neither party.[6]

3. The parental duties performed by each party on behalf of the child.

Mother and Father equally perform parental duties on behalf of [] Child while [] Child is in the parties' respective care. This factor favors neither party.

4. The need for stability and continuity in the child's education, family life and community life.

Mother is married and residing with her new husband. Father is married, owns his home, has been steadily employed and is self-employed operating his own business and is able to provide [] Child with a stable home life. [] Child is currently enrolled in the Schuylkill Valley School District where [] Child's step-siblings attend. While the [c]ourt was impressed with Mother's extended family, Father has a substantial support system. This factor favors Father.

5. The availability of extended family.

Paternal grandmother, and other members of Father's family and step-mother's family are very involved in [] Child's life and are available to assist with caring for [] Child. Maternal grandfather resides in Schuylkill County. Mother relies on Father's extended family to provide care for [] Child when needed. This factor favors Father.

6. The child's sibling relationships.

[] Child is extremely close with his siblings on Father's side. Father has 50/50 custody of his older son, [W.], with whom [] Child is closely bonded. Father's wife's children (ages 11 and 15) also reside primarily with Father and [] Child is extremely close to them as well. This factor favors Father.

---

[6] The trial court did not separately address Section 5328(a)(2.1). However, the evidence established that, while Child is being evaluated through counseling, any involvement of CYS did not proceed beyond a telephone call to Father. N.T., 8/17/17, at 54-55, 70, 82, 95.

7. The well-reasoned preference of the child, based on the child's maturity and judgment.

[] Child is six (6) years old and therefore too young to provide a well-reasoned preference. This factor favors neither party.

8. The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child.

The [c]ourt is not convinced that either parent actively attempts to alienate the Child from the other parent. Their anger with each other is so strong that no doubt the Child picks up on that. This must stop or the Child will suffer.

9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

Both parents meet this factor equally.

10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

Father is able to provide for all of [] Child's needs. Father owns his home in the Schuylkill Valley School District and he and his wife intend to stay where they are for the foreseeable future. Father has a strong support network to assist Father when needed. While Mother meets the requirements of this factor, the [c]ourt is of the opinion that overall this factor favors Father.

11. The proximity of the residences of the parties.

Mother resides in Royersford, PA[,] which is approximately 45 minutes from Father. Mother chose to relocate this distance away from Father. This is really the problem. The [c]ourt sees no reason for Mother's choice of residence other than to be with her new husband. If the parties were closer in residence, the [c]ourt would favor a shared custody arrangement. As it is, Mother chose to relocate outside of Berks County. This factor favors Father.

12. Each party's availability to care for the child or ability to make appropriate child-care arrangements.

Father and Father's family have always been able to provide care for [] Child. Mother relies on Father's family for care of [] Child

when Mother is unavailable. While there was credible testimony that Mother's in[-]laws are planning to retire and thus available to assist Mother, they have not done so yet. This factor favors Father.

13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

As stated above, the parties do not cooperate with one another on much of anything. This must change.

14. The history of drug or alcohol abuse of a party or member of a party's household.

There is no history of drug or alcohol abuse by either party. This factor favors neither party.

15. The mental and physical condition of a party or member of a party's household.

There are no mental or physical concerns for either party. This factor favors neither party.

16. Any other relevant factor.

None.

Decision and Order, 10/16/17, at 5-10.

Turning to Mother's issues raised on appeal, Mother first claims that the trial court erred in awarding primary physical custody in the interim order of August 18, 2017 without consideration of the custody factors. Mother's Brief at 15-22. Distinguishing the matter from *S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa.Super. 2014), Mother contends that, as the court altered physical custody, the court was required to and failed to consider the custody factors. Mother's Brief at 19-22. She states,

The trial court was obligated to consider the best interest of the [m]inor [c]hild when considering which school district the [m]inor

- 13 -

[c]hild would attend.  The Act requires a court to consider all of the 23 Pa.C.S.A. § 5328(a) best interest factors when ordering any form of custody.  The trial court failed to do this in the case at bar.  The trial court modified the [c]ustody [o]rder from an equally shared custody arrangement to Father having primary physical custody without considering the 23 Pa.C.S.A. § 5328(a) custody factors.

*Id.* at 19-20 (citations omitted).

Moreover, Mother asserts that the court failed to justify its decision with any information related to the two school districts in question.  Rather, the court only referenced Father's support group, particularly Paternal Grandmother, in explaining its decision.  *Id.* at 22-24.  Notably, however, Paternal Grandmother no longer cares for Child.  *Id.* at 25.  Further, Mother asserts that the court relied on its own personal knowledge of Schuylkill Valley School District and ignored evidence with regard to Spring-Ford Area School District.  *Id.* at 24-25.

On this topic, the trial court reasoned:

Furthermore, counsel for the parties specifically requested this [c]ourt to make an expedited decision on where [] Child would attend school and waived any detailed findings on the enumerated factors as the beginning of [] Child's school year was less than a week away.  Accordingly, this [c]ourt did make an expedited decision[,] which resulted in the grant of primary physical custody to Father and [] [C]hild beginning school in the Schuylkill Valley School District where he was already enrolled with his step-siblings.

Trial Court Opinion ("T.C.O."), 11/30/17, at 3.

We have clarified that the factors under Section 5328(a) are required to be addressed where an order impacts an award of custody and does not

- 14 -

J-A07036-18

merely deal with a discrete and distinct issue. *S.W.D. v. S.A.R.*, 96 A.3d 396

(Pa.Super. 2014).

> It is also true that resolution of an otherwise ancillary matter may affect a form of custody and require consideration of the § 5328(a) factors. For instance, the choice of a child's school may factor into a trial court's decision to award a form of custody when the trial court is addressing a request to establish or change legal or physical custody in connection with the choice of school. One parent in a custody dispute may argue that he or she is entitled to primary physical custody because his or her residence has much better schools. On the other hand, many times- like here- these items may appear as independent, discrete issues advanced by motion or petition that does not require a change in the form of custody. Although any decision requires consideration of the child's best interest, only the former situation requires consideration and application of the § 5328(a) factors.

*Id.* at 403.

> Further,

> We recognize that, when a trial court makes a ruling concerning which school a child will attend, it also may be required to modify the parties' physical custody arrangement. This is particularly so when the parties live far apart, making it impractical for one parent to transport the child to school. In those cases, because a change in physical custody would occur, the § 5328(a) factors would all need to be addressed.

*Id.* at 407 n.6.

In the instant matter, we observe that there was no objection raised by

Mother after the court's decision on the record on August 17, 2017. Further,

there was no motion for reconsideration or other filing after entry of the court's

August 18, 2017 interim order memorializing same. Mother did not raise the

trial court's award of primary physical custody to Father and failure to address

the custody factors until the end of the hearing on October 6, 2017.[7] **See** N.T., 10/6/17, at 134-35. As such, we find that Mother's challenge is waived. **See** Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); **Fillmore v. Hill**, 665 A.2d 514, 515-16 (Pa.Super. 1995) (stating, "[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.") (citations omitted).

Even had this issue not been waived, we would find that Mother's claim fails. The record reveals that the court handled the matter on August 17, 2017 as a petition for special relief subject to further hearing, resulting in the entry of an interim order. Upon presentation of further evidence on October

_____

[7] Counsel argued in part,

> Your Honor, at the end of the first part of this custody trial, which took place on August 17th, 2017, the [c]ourt advised counsel and it was placed on the record and to the parties that [Child] would be attending school in [F]ather's school district and be living primarily with [F]ather, and the [c]ourt stated its primary reason for doing so was because [F]ather's mother had acted as a babysitter to the minor child. With all due respect to the [c]ourt[,] that reason is not sufficient to make a decision as it relates to primary custody; moreover, that is contrary to the 16 custody factors that guides this [c]ourt in making those decisions.

N.T., 10/6/17, at 134-35.

6, 2017, the court then entered a final order based upon full consideration of the custody factors pursuant to 23 Pa.C.S.A. § 5328(a). Thus, Mother's claim is without merit.

With her second issue, Mother asserts that the trial court erred in determining that the matter was a relocation case and finding that factor 11 favored Father without consideration of the relocation factors pursuant to 23 Pa.C.S.A. § 5337. *Id.* at 27. In maintaining that relocation is not relevant, Mother suggests that "23 Pa.C.S.A. § 5337 does not apply in a case where both parties have lived in their current location for some time. Additionally, Mother argues that this case is not a relocation case as defined under the Act[,] 23 Pa.C.S.A. § 5322(a)." *Id.* Mother, however, acknowledges that the trial court did consider the relocation factors in its supplemental opinion. *Id.* at 27.

Specifically, Mother points to the fact that she moved from Tamaqua to Royersford one year prior to filing for the current modification. *Id.* at 28, 32. She notes that this reduced the driving distance between Father and her from 55 minutes to 45 minutes. *Id.* at 28, 33-34. More importantly, Mother indicates that the parties kept the custody order in place. *Id.* at 32-33. As such, it was not her move that caused a need to alter the custody schedule, but Child's start of kindergarten. *Id.* Mother argues, "Because the trial court erroneously determined that Mother had relocated[,] and the trial court believes this factor was controlling[,] the trial court awarded Father primary physical custody. Therefore, Mother avers that the trial court committed a

- 17 -

reversible error in determining that Mother relocated and in finding this factor in favor of Father." *Id.* at 35.

Related to Mother's claim, the trial court stated:

> Plaintiff's Error Complained of on Appeal No. 2 alleges that this [c]ourt erred in determining that this is a relocation case and finding Factor 11 – "The proximity of the residences of the parties" in favor of Defendant without considering the relocation factors as set forth in 23 Pa.C.S.[A.] § 5337. Mother provided Father's counsel with a Notice of Proposed Relocation and included a proposed custody schedule. The [c]ourt clearly accepted that Father did not object to Mother's relocation. The [c]ourt merely mentioned under Factor 11 that distance is an issue regarding primary custody. . . .

T.C.O. at 2-3.

Pursuant to 23 Pa.C.S.A. § 5322(a), relocation is defined as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." Moreover, in *D.K. v. S.P.K.*, 102 A.3d 467, 477-78 (Pa.Super. 2014), we held that a trial court is to consider the Section 5337(h) relocation factors only where a parent is relocating with a child. We stated as follows:

> Based on the information that [S]ection 5337(c)(3) requires the party proposing relocation to provide to the nonrelocating party, it is evident that the legislature did not intend for [S]ection 5337(c) to apply in a custody case, where both parents have lived in their current residences for some time, and neither parent is relocating. Rather, [S]ection 5337 is designed to give notice to a party with custody rights that the other custodial party intends to change his or her geographical location and a modification of a custody arrangement will be necessary to allow the relocating party to continue to exercise custody rights. Section 5337(c) obviously envisions a change in the relocating party's geographical location that will impact custody and arms the nonrelocating party with the information necessary to assess the proposed change of

- 18 -

circumstances. In a case such as this, where both parents remain in their established residences, there are no changed circumstances to assess. The challenge is solely to a change in the custody arrangement and not a party's relocation. Moreover, in a custody case where both parties continue to live in their current residences, the information required under [S]ection 5337(c) is either known or will be revealed as a matter of course in either the complaint for custody or the custody proceedings.

*Id.* at 473.

In the case at bar, Mother and Father have resided in their current locations, Mother in Royersford and Father in Bernville, for at least one year prior to the filing of the petition to modify in March 2017. They continued to exercise physical custody of Child as provided by the March 25, 2014 order until entry of the August 18, 2017 interim order. Modification of the physical custody schedule was not necessitated by relocation, but rather the Child beginning kindergarten. Hence, this matter is not a relocation matter requiring consideration of the relocation factors. ***See D.K.***, 102 A.3d at 477-78; 23 Pa.C.S.A. § 5322(a). Further, it is clear that neither the court, nor the parties, determined this matter to be a relocation matter. The trial court merely indicates that Mother is no longer in Berks County, and addresses Mother's distance from Father. Mother's second issue is therefore without merit.

Next, with her third issue, Mother argues that the trial court erred in determining that factor 1 favors neither party, where it favors Mother. Mother's Brief at 35. Mother states, "Mother believes that the trial court erred in determining that neither party encourages frequent and continuing contact between the Minor Child and the other party, where Mother had placed

- 19 -

abundant evidence of record that Mother did permit contact between the Minor Child and Father whereas Father did not." *Id*. Mother raises issues communicating with Child when Child is with Father and Father's lack of desire to use Skype or FaceTime. *Id.* at 36-37. She likewise notes that Father denies her requests for vacation or time with Child when Child is off and Mother is available, as well as her effective exclusion from Child's counseling. *Id.* at 37-39. Conversely, Mother provided time to Paternal Grandmother during Mother's Christmas custodial time and invited Father and his family to celebrations. *Id.* at 39.

As to her fourth issue, Mother maintains that the trial court erred in determining factor 3 favors neither party and factor 10 favors Father, where they favor Mother. *Id.* at 40.

> Mother believes that the trial court erred in determining that 23 Pa.C.S.A. § [5328](a)(3) – "The parental duties performed by each party on behalf of the Child" was in favor of neither party where it clearly favored Mother. Mother presented overwhelming evidence that she performed the parental duties on behalf of the Minor Child[,] which was undisputed and [F]ather agreed with on the record. Mother believes that the trial court erred in determining that 23 Pa.C.S.A. § 5328(a)(10) – "Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child" favors the Father, where once again the facts of record make it clear that this factor favored Mother.

*Id*. Mother recounts evidence of her participation and Father's lack of participation as it relates to Child's education, medical care, and extracurricular activities. *Id.* at 41-46. She therefore asserts:

- 20 -

The trial court ignored all of the above evidence and did not consider any of it when considering the custody factors. The trial court ignored all of the above facts, all of which are undisputed and all of which favor Mother, and to not find that 23 Pa.C.S.A. § 5328(a)(3) and 23 Pa.C.S.A. § 5328(a)(10) favor Mother is uncomprehensible [sic] where the trial court has no facts in its decision that could outweigh the above.

*Id.* at 46-47.

With her fifth issue, Mother claims the trial court erred in determining that factors 4, 5, and 12 favor Father, where they favor Mother. *Id.* at 47. Mother states, "Mother believes that the trial court erred in determining that 23 Pa.C.S.A. § 5328(a)(4), 23 Pa.C.S.A. § 5328(a)(5) and 23 Pa.C.S.A. § 5328(a)(12) favor Father, which is contrary to the evidence, wherein these factors favor Mother." *Id*. Moreover, as to her reliance on Father's extended family, Paternal Grandmother in particular, for support, Mother suggests that she was "forced" to utilize Paternal Grandmother. *Id.* at 49. Further, she highlights that Paternal Grandmother no longer provides regular care for Child. *Id.* at 50. In addition, Mother notes her extended support system, including her in-laws. *Id.* at 50-51.

Lastly, as to her sixth issue, Mother avers that the trial court erred in determining factor 6 favors Father, where this factor favors Mother or neither party. *Id.* at 52. Mother argues, "Mother believes the trial court erred in determining 23 Pa.C.S.A. § 5328(a)(6) – 'The child's sibling relationships' favors Father where the evidence of record is contrary to the trial court's determination." *Id*. Mother continues, "The trial court's factual findings are inconsistent with the facts placed on the record. Moreover, the trial court

entirely failed to consider any of the siblings on Mother's side of the family." *Id*. Mother points to the fact that Father's oldest son is now 18 years old and emancipated and no longer lives with Father. *Id.* at 53. Similarly, Father's stepchildren are eleven years old and fifteen years old, and not close in age to Child. *Id*. Furthermore, Mother indicates that the trial court failed to recognize Child's relationship with her stepson, who is three years old, as well as the fact that she is expecting a child in May 2018. *Id.* at 53-55.

With regard to the custody factors, we have stated that the trial court is required to consider all of the Section 5328(a) factors in entering a custody order. *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa.Super. 2011). Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S.A. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013). Critically, as we stated in *M.J.M.*:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. *See A.D. v. M.A.B.,* 989 A.2d 32, 35-36 (Pa.Super. 2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*Id.* (emphasis added). Further, while a parent's role in caring for a child may be considered in light of the statutory factors, "the primary caretaker doctrine,

insofar as it required positive emphasis on the primary caretaker's status, is no longer viable." ***Id***.

As we construe the remainder of Mother's claims on appeal, issues three through six, we interpret the issues raised at their core as disputes to the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Mother, in essence, questions the trial court's conclusions and assessments and seeks this court to re-find facts, re-weigh evidence, and/or re-assess credibility to his view of the evidence. This we cannot do. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. ***See C.R.F.***, 45 A.3d at 443; ***see also E.R.***, 129 A.3d at 527. As we stated in ***King v. King***, 889 A.2d 630, 632 (Pa.Super. 2005):

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .

(quoting ***Hanson v. Hanson***, 878 A.2d 127, 129 (Pa.Super. 2005)). After a thorough review of the record, we find no abuse of discretion. Further, to the extent Mother challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. ***See M.J.M.***, 63 A.3d at 339.

In the case *sub judice*, the trial court exhaustively and reasonably analyzed and addressed each factor under Section 5328(a). **See** Decision and Order, 10/16/17, at 5-10. After careful review of the record, we determine that the trial court's findings and determinations regarding the custody factors set forth in Section 5328(a) are supported by competent evidence in the record, and we will not disturb them. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2018